Thank you, Your Honor. May it please the Court, and with the Court's permission, I'm going to try to reserve three minutes for my rebuttal. Appellant William Poff is a disabled military veteran who served in the Marine Corps for ten years before being honorably discharged in 2000. During his service, he suffered a disability which resulted in the payment of ongoing military veterans' disability payments. In 2010, Mr. Poff became subject to a $4.2 million restitution judgment. Under the MVRA, military veterans' benefits are shielded by an exemption from collection for restitution judgments under Section 6334A-10 of Title 26. Despite this exemption, the government seized nearly two years of Mr. Poff's military veteran benefits. This seizure violated the military exemption and it exceeded the power, the statutory authority of the government, to seize funds that are allowed by the schedule entered by the District Court. With respect to Section 6334A-10, that section protects any amount payable to an individual as a service-connected disability benefit. The government textual argument, no doubt to the surprise of the Congress that enacted it, would say that this exemption has no effect whatsoever for any veteran once he or she has received his or her veteran's benefits. The only money that the exemption protects, in the government's understanding, is money that the veteran has not even received. This would undermine the statutory purpose of Section 6334A-10 of protecting funds that are given to military veterans who suffer a disability in service of the country to have those funds saved for their support and maintenance. It would also violate... For their own support and maintenance. For their own support and maintenance. Well, what about, what about the, it seems to me the way the system is set up is that at the outset, that is at the time of sentencing, your client had the ability to fill out a financial disclosure form and argue that he had some special needs that, and I don't mean special needs in a defined sense, but circumstances such that some of those benefits should have been set aside and exempt from execution. But I don't think he did that. Is that right? He, if you're asking did he submit a form that claimed an exemption for these, no. But I don't think that that's how the statutory scheme works. Hang on, hang on. I have one other question and then I'm going to try to get out of your way. But I read the record the same way. I don't think he did that. And my next question is, is there anything that prevents him from doing that now? From submitting a claim for an exemption? From asking, going back to the trial court and explaining the circumstance, whatever it is. Because after all, he's, he doesn't have rent to pay. He's not paying for groceries. You know, so when we talk about the Consumer Protection Act and some of these other exemptions where we can understand why Congress might have been concerned that a debtor have the ability to set aside some funds. Your client's in a different circumstance because he's an inmate. And it just seems to me that under the MVRA there's a mechanism for proceeding that way and it wasn't, your client didn't take advantage of it. So is there anything that prevents him from going back and making that claim in the district court now? I mean, I think he did make the argument in the district court in this case. Not at the time of sentencing he didn't. No, well, at the time of sentencing it wouldn't have been presented, right? Because at the time of sentencing the court simply considered how much he could afford to pay and the court determined that he could afford to pay 25% of his gross monthly income or I believe it's. The district court didn't know about the disability benefits. Well. Because it wasn't disclosed to the probation officer. So the government does say that, but that's not correct. I mean, it may. Well, it's easy, that's easy to look at. If you look at the probation officer's report and recommendation, they list the resources that are available to the defendant. And everybody, I haven't seen that particular report and recommendation, but everybody seems to say that he didn't disclose it. So, yeah, I should, I guess, reform my answer. What the PSR says is the PSR says we tried to receive additional cash flow information from Mr. Poff and we have not been able to receive it. Let me ask you this. At the time of his sentence was he receiving benefits? Yes. Did he have an obligation to tell the probation officer about that? He was supposed to submit cash flow information to the probation officer. At the time of the report, that's what the probation officer said was that he had not received these cash flow statements. However, there was a government auditor who went through, because this was a fraud case, and so they were tracing the money that had come into his account, including from the co-defendants and other people. And so the government auditor actually testified about the VA benefits that came into his account. And so that appears in our further excerpt of records at pages 4, 5, and 8, which we submitted. FER4 and 8, there's some conflicting. I agree with Judge Pius. It's a little conflicting about whether this was disclosed or not. I think it was not disclosed, but it was discovered. And FER4 and 8 indicates that the judge ultimately knew about it. But, I mean, to the point Judge Pius is making, the judge didn't hear from your client about why there was, if there was any kind of special need for a set-off, so the judge could have weighed that and made that determination at the time of sentencing. That's what we're really trying to get at, because we're talking about whether the statutory scheme contemplates or provides an opportunity, and I think Judge Pius's point is it does provide an opportunity. And I guess what I would say is that I think that the military veterans' benefit exemption is separate from the court's authority and responsibility, the district court, to look at his financial resources and determine what he can pay. That's one obligation. But regardless of what the district court finds on that question, the freestanding statutory exemption in A10 says that anything that's military veterans' benefits simply cannot be seized, whether it's needed or not. So when you started off your argument, you pointed to the statute and you emphasized the terms payable to. Now, isn't that different than received? It is different, Your Honor. And our construction of the statutory scheme, in order to make it make sense, is that payable to means it was actually owed to this veteran on account of his disability suffered in his military service. The way I read that is that somebody, a creditor, couldn't put a lien on his benefits directly with the Veterans Administration, completely exempt, couldn't attach it, couldn't get it. Once it gets to his account, though, then it's received, and I'm not sure that it retains that same character. At least, you know, in civil cases, you often see, and I saw this a lot more in state court, when a creditor was trying to get retirement benefits, you know, and they try to hit, like, the entity that's paying out the benefits. They can't do that because it's payable. But once it hits their checking account, it's free to go. You can tie it up, and you can collect it. So why isn't that similar? I mean, it doesn't say received. I think, Your Honor, that the plain language, if you weren't looking at the statutory context, is ambiguous, and payable to could be a timing provision, have you received it yet or is it simply still payable, or it could be a provision that distinguishes between, as we claim, the person to whom the money is actually owed versus someone else that might receive by assignment or some other method the restitution benefits. And the reason that we think that our construction, where payable to is intended to make sure that it's limited to the veteran who earned the benefit is the better one, is because that's the one that gives meaning to what Congress was trying to do by ensuring that veterans, because, of course, this would apply both while incarcerated and after, and if you want veterans to be able to support themselves, then they have to be able to keep the money once they get it. And I think the second reason is that... But what happens when the money gets commingled? I think there could become a time when it becomes difficult to determine if you went and bought a house with it. For example, in the Porter decision, what happened, the Porter Supreme Court decision was a question where the statute actually specifically said that once the veteran's benefits had been used to buy other property, it was no longer the case that they were shielded. And the Supreme Court said when you put the money into a federal savings and loan, does that count, is that enough? And the court said, you know what, we're going to construe this liberally in favor of support and maintenance of veterans and find that federal savings and loan is not enough to get you to the point where it's no longer traceable or where it's been used to buy other property. And I think the same thing is true here. There may come some point where the money has become so intermingled that you say this no longer has a character as veterans' benefits, but this isn't that case, because in this case, the veterans' benefits were deposited and sitting in his account as cash in his account and nothing was ever done with them. But what about the context in which the MVRA was passed and Congress was very clearly trying to fix the previous statutory system and they came in with this language that says any source, any source. They're very concerned that victims get compensated. And your client has a $4 million-plus judgment against him because he was convicted of a fraud crime. What do we do about that? At the time Congress adopted this statute, it certainly knew that there were a lot of exemptions out there, including for military benefits. Congress said any source. Two things, Your Honor. The any source language appears in Section 3664N with respect to the substantial resources. Right. So it does not affect the military exemption, which is a separate exemption from that from any source provision. No, I'm just trying to say that we have these conflicting statutory provisions that were in place at the time Congress came in and said for victims, for the MVRA, for those purposes, we mean any source is to be available to compensate crime victims. So what do we do about that? I think that Section 3613A, which is the one that incorporates the military exemption, is very clear that that's what trumps when it comes to collecting the levy because it says that the United States may enforce a judgment imposing a fine and it later applies it to restitution in accordance with practices and procedures for enforcement of a civil judgment, notwithstanding any other federal law, a judgment imposing a fine may be enforced against all property or rights to property of the person fined except that property exempt from levy for taxes pursuant to Section 6334A10 and other sections shall be exempt from enforcement of the judgment under federal law. So that specific provision trumps all other provisions about how it's available from any source. I know you keep stating the Conclusion Council, and I appreciate that, and I appreciate your participation in the case and your very able advocacy, but if you could just truly, I do, if you could just tell me why does it trump? Because it's more specific? No, my argument is because Section 3613A says notwithstanding any other federal law, a judgment will be---- Right, and you've got another statutory provision that says funds from any source. So you're conflicting, and I'm trying to figure out how it is you decide that one trumps the other. If you could help me out there. Yes, and I think it is all in this Section 3613A because that's where it says all property, all rights, and it says in that single sentence, notwithstanding anything else, it can be enforced against all property except these specific things. And so the all property language is qualified right here by Section 6334A10. I understand your argument. Thank you. With respect to our other argument, which is the substantial resources argument, our argument here, I think we'll probably have to mostly rely on our briefs because I am running out of time. But I do just want to point out that the government's reading really does place no limitation whatsoever on what can be seized under 3664N. And the result of that is that the rest of the statutory scheme would be swallowed by the government's construction of 3664N. I think that cannot be the correct construction. Thank you, Your Honors. Thank you. Mr. Forsyth. May it please the Court. I'm Kyle Forsyth on behalf of the United States. Counsel for Mr. Poff limited her remarks this morning to the first two issues in the briefs, the substantial resources and the statutory exemption for veterans' benefits that are payable to a beneficiary. I will similarly limit my comments this morning unless the Court has specific questions about the other issues. This Court should affirm the District Court's payment order, which directed the Bureau of Prisons to take $2,663 from Mr. Poff's inmate trust account and return that money to the victims of his $4.2 million mortgage fraud scheme. Those victims include individuals, not just commercial banks and major lenders, but individuals to whom he owes over $1.2 million. That result is required by the Mandatory Victims Restitution Act, and specifically Section 3664N of Title 18, which requires that when an incarcerated debtor who owes restitution receives substantial resources from any source, that restitution debtor is obligated to use those resources to make restitution to his victims. Is it the government's position that at the time of sentencing the judge couldn't have set aside any funds, depending on the financial circumstances of this prisoner? I realize that didn't happen, but it seems to me that the scheme allows the sentencing judge at the time of sentencing to look at what his obligations are and what his resources are and indicate otherwise. Is that wrong? Your Honor, the ---- Because your argument doesn't seem to allow for that. Your argument says every penny. That's correct, Your Honor. And let me explain why that's the case. The statute specifies what property is exempt from collection of restitution, and the judge at sentencing cannot override those exemptions or create additional exemptions contrary to what the statute provides. What can the judge do at sentencing? The judge can set a payment schedule, which establishes the minimum amount that a defendant is obligated to pay. And, in fact, the judge is required to set a payment schedule by 3664F2. Right. So if the judge had ---- that's what I'm trying to get at. I'm trying to figure out what leeway there is at that time. Is it your position then that there's no harm, no foul, for the defendant's failure to provide the financial disclosure information that the PSR was trying to get? Well, the judge could not have made his ---- the veteran's disability benefits or the money that was in his inmate trust account that we obtained through this 3664N motion. The judge could not have entered an order exempting those funds from collection because the exemptions are laid out in the statute. And if it's not exempt under ---- Answering a different question. Yeah. I mean, suppose at the time of sentencing everybody knew that he was getting a stream, a monthly stream of money. Right? Right. And why couldn't the judge say, okay, $75 of this money is for Mr. Hoff? The judge could ---- He could do that. The judge could say in the payment schedule, could account for that in the payment schedule. Yes. And not require him as a matter of maintaining a particular payment schedule to pay that $75 per month. Well, that's exactly what we're asking, counsel. And you just a minute ago said he couldn't do that. It seems to me ---- why not? The payment schedule is not a limitation on the United States' ability to collect restitution. And the language of the payment schedule that the judge entered here makes that very clear. It says that the payment schedule is the minimum amount that the defendant is expected to pay, and that if he can pay more, then he shall pay more. But these aren't trick questions. What we're trying to get at is something that we see happen all the time, and it seems to me to be a little inconsistent with what your argument is, because your argument in the briefing is very strong advocacy that every single penny should be available to restitution. And in this case, this defendant did not take advantage of this opportunity that I think he had to at least at sentencing argue that some small bit of his disability income for a veteran's service-related disability payment, of course Congress takes that very seriously, too, that some small part of that should have been set aside for whatever reason the judge thinks, maybe as an incentive to make sure that we want to do everything we can to, you know, encourage the rehabilitation of this individual. I don't know why. But I think you're now saying that could have happened, you know, or could have been accommodated in the payment schedule. And the reason I'm asking this question is because if that's the case, it seems to me that's the obvious peg for what is or is not substantial. Well, in this case, substantial resources should be evaluated in light of the amount of money that was at stake, $2,663. Counsel, that can't be right, because then the bigger the crook, the bigger the exemption. And that can't be what Congress intended. No, no, Your Honor. I'm not talking about the amount of restitution owed, the $4.2 million. I'm talking about the amount of money obtained through the payment order, the amount of money that was in. Okay, so $2,000, is that a lot of money? It would be if it were in my pocket. Yes, it is substantial. The Court, in addressing and construing that phrase of $2,000. The problem you've got with this argument, if you go that way, is that these, of course, were monthly checks. And it was just through an administrative goof, an error, that that happened to come in in a lump sum. So if you go down this argument, it seems like the government gets to be out on pretty thin ice really quickly, because then each individual check coming in the seizure, but the lump sum is. And I can't imagine why Congress would have cared about the rate at which the checks were coming to him. We don't concede that even at the $133 monthly level, that that would not be substantial resources. You could always move it under K, right? If his circumstances had changed, you could go back to the district court and say, hey, instead of getting $133, he's getting $250. We want that extra amount of money or whatever amount to go to. Yes. So this money was not beyond the reach of the government at any point. The 3664K remedy also exists. These are overlapping remedies. The Mandatory Victims Restitution Act is full of overlapping remedies, because, as Your Honor noted, Congress was very serious about prioritizing the collection of restitution for crime victims. My questions aren't trick questions. I'm trying to make sense of these conflicting provisions. And the Mandatory Victim Restitution Act has very expressed language, I think, and you make a strong textual argument about it. It just seems to me that we've got this word substantial we're trying to grapple with, and why shouldn't we reconcile that by saying it's what's above this payment schedule? If it's permitted by the payment schedule that the judge sent at time of sentencing, it seems to me to be fair game. And if you've got a response, it would be helpful for me to hear it. Yes, as I understand Your Honor's question, you're asking if the amount of money that we are pursuing under 3664N exceeds the amount of money that the defendant is obligated to pay under the payment schedule, that that would be an indication that the money pursued under 3664N is substantial. I'm saying just the opposite. If there's a little bit of money that the judge says you don't have to contribute towards a payment schedule, for whatever reason the district judge finds at the time of sentencing, then it seems to me defendant would have a pretty strong argument that that wouldn't be subject to seizure. But anything over that should be considered substantial, it seems to me, certainly during the time where a person is in prison and doesn't have any of the expenses that the rest of us have to feed and clothe ourselves. Yes, yes, precisely. And Mr. Poff is incarcerated and doesn't need to provide for his daily living expenses, and accordingly this $2,663 was substantial. And it's reachable under 3664N. I'd also like to address the statutory exemption. Yes. The counsel is arguing about how they should be read together. Yes, of the payable to, and payable to here in Title 266334A10, which is incorporated by the MVRA, it is best read as a timing provision that distinguishes between payments that remain payable to a beneficiary and payments that have already been received and deposited into an account. We see that when Congress wanted to protect money after it had been received, it did so in the immediately preceding paragraph of the exemption statute in A9. It says income and wages payable to or received by a defendant. There has to be a distinction there, and it's best understood as a timing provision. There's another provision in the law in Title 38, which is the provision that the Supreme Court construed in the Porter v. Aetna decision. That provides protections for veterans' disability benefits, but it does not apply in this case because it's overridden by the MVRA, and it also doesn't apply when the IRS is collecting taxes. But it does apply against private creditors like Aetna Insurance Company and Porter v. Aetna. And in that case, and in that statute, it's 38 U.S.C. 5301. When Congress wanted to protect veterans' benefits after they had been received by a beneficiary, it said so expressly. The language of that statute says that the benefits are protected, quote, either before or after receipt by the beneficiary. That's very different language than the language that Congress employed in the 6334A10 exemption. And so this is what the district court relied on in part, right? He said there's a difference between payable to and these funds we're talking about that have already been received by Mr. Poff. Yes, that's correct. That's correct. And the fact that the money is exempt only while it remains payable to is not a meaningless exemption. Mr. Poff makes that argument. It's not meaningless because in the absence of this payable to exemption, the government could collect this money at its source. It could collect it from the Veterans Administration directly through or through the Treasury Offset Program. And Mr. Poff would never see another penny of his veterans' benefits for the rest of his life. But this exemption has real meaning because it prevents us from doing that. Unless the Court has further questions, I'll rest on a brief. Thank you. I have no questions. I just passed? No. Thank you. You may rest. Okay. Thank you, Your Honor. I just have a couple of points that I want to make. One is about how this schedule works, just to be clear about what he did at the district court. And that is the district court is obligated to take the full restitution amount, consider the financial resources of the defendant, and then enter a schedule the defendant is to comply with. Mr. Poff is not contesting that schedule. And so it's possible that if he thought he wouldn't have enough money for the schedule without using exempt benefits, he should have told the court that. But he has no challenge to the schedule and no problem with the schedule. He thinks the district court acted correctly in setting the schedule. Our argument is that the schedule cannot then be changed. It's not a schedule that's set as an advisement and then the government is permitted to go seize all the money that they want despite the schedule. The schedule is part of a statutory scheme that then is only changeable in certain circumstances. Section 3664K, if there's a change in circumstances. Section 3664N, if substantial resources like inheritance, settlement, or judgment. So these are payments that are unanticipated and not accounted for in the schedule. But otherwise, the government is limited to the schedule. The government spoke about, Mr. Forsyth, about Section 5301, which to be clear is not the section that we're relying on. It was discussed in the district court, but it's not one that we raised on appeal because it's not applicable here. On the payable to versus received by, the ultimate problem with the government's reading is that it makes all four of the sections, because it's not just the veteran benefit section. There is a similar exemption that Congress made applicable that goes to workers' comp. If you look at Section A4 and A7 and A11, each of those is framed as payable to. And the problem with the government's construction is that if payable to really does just mean we can't levy it before the veteran gets it, the veteran is indifferent as to whether the money is taken before the money is deposited in his trust account or after it's deposited in his trust account. In either way, either circumstance, he doesn't have the money. And while here, you know, Judge Christin, you're correct that he needs less money for subsistence and those type of things when he's in jail for obvious reasons, but the Bureau of Prisons has recognized in their manual, and we cite this in our brief, as well as in several district court cases, the importance of an inmate saving some money so that when he gets out, he has some prospect of purchasing the clothes or renting the apartment or the kinds of things that he or she needs to get rehabilitated or reincorporated into society. And that is what Mr. Poff is trying to do with funds that are exempt and that fall outside of the schedule. Counsel, do you agree, I think time is ticking and I don't want to violate Judge Gould's rules here, but . . . We'll have whatever time extra you have to. I'll just be very quick. Do you agree that . . . I'm looking to 18 U.S.C. section 3664F2. Okay. I keep coming back to what the judge did at the time of sentencing. Do you agree at that time that the judge was entitled to consider your client's income but also his other financial obligations and could have allowed a setback? Yes. He was obligated . . . In the payment schedule. Yes. He could not. And part of that is he can't say you're going to have military benefits, which are exempt, and you have to pay those, right? Right. But he has to consider the resources that are available for restitution and such. Did the client make any showing of financial obligations at the time of sentencing? Not to my knowledge. So let's assume that the judge fully was aware that he was getting . . . I don't know what the financial benefits were at that time. It was slightly more before he was in prison. It cuts down in prison. Right. So let's say the judge knew all about that. It was in the PSR. The judge says, Aha! You've got money coming in, $350. Guess what? Your payment obligations, $350 plus whatever other money the judge can identify. Why couldn't the judge do that? If the judge has to enter a schedule that the defendant can realistically pay based on non-exempt funds. So if the only way that he can get to that number, the judge could get to that number, is by assuming that Mr. Poff will pay his exempt funds, then that is not an appropriate schedule. Your point is that it's exempt even then when the judge is . . . Right. It is exempt at all times. . . . is setting his schedule. Yes, that's correct. That's correct. The judge can't touch it. That's correct. And so it may be that the judge can take that into account and then determine that that's all that he needs. And so all the money over that, he determines that he could take. But the actual veteran's benefits are not seizable. Thank you. But in that instance, they wouldn't be seized. Excuse me? In that instance, they wouldn't be seized. He just has to make the payments. But then they would no longer be exempt from restitution if the only way that the person could realistically make the payments, because the judge is supposed to set a realistic schedule considering all the financial resources. If that's necessarily going to take the disabled veteran's benefits, then that would not be . . . it would run afoul of the exemption. Okay. Thank you. Thank you very much for your argument. And again, I'd like to say a special thanks to Ms. Johnson, to her colleagues at the table, and to her law firm. Remind me which firm you're . . . Gibson Dunn, Your Honor. And to Gibson Dunn, which has contributed to our efforts here by your pro bono representation. Thank you, Your Honor. I also, of course, thank Mr. Forsyth for his fine work. So, the case, Porter v. Glee . . . Oh, wait, I'm sorry. The Poff case, United States v. Poff, 16, 301-41, is hereby submitted.
judges: Gould, Paez, Christen